IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM JANECYK and ERIC WILIM, on behalf of themselves and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>EGGLAND'S BEST, INC. and EGGLAND'S BEST, LLC,<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Tim Janecyk and Eric Wilim (collectively, "Plaintiffs") bring this putative class action against Eggland's Best, LLC ("Eggland") and Eggland's Best, Inc. (collectively, "Defendants"). Plaintiffs' allegations regarding their own experiences are based on their personal knowledge. Plaintiffs' allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

I.      **INTRODUCTION**

1.      This action arises out of false and misleading statements that Defendants make about the Eggland's Best Cage Free ("Cage Free") eggs that they sell.

2.      Many modern consumers are aware of, and concerned about, the poor living conditions of animals raised in "factory farms." As a result, they seek food products that come from animals housed outside of artificial, industrial facilities. And they are willing to pay premiums for those products.

3.      Knowing this, Defendants claim that their Cage Free eggs come from hens that are "free to roam in a pleasant, natural environment." They include that statement on the packaging

for all the Cage Free eggs that they distribute nationwide.

4. But that statement is false. The truth is that many hens producing Cage Free eggs live in typical factory farming conditions. They are confined indoors 24 hours per day, 365 days per year. They live in windowless structures made of concrete, metal, and dirt. The structures contain hundreds of thousands of hens packed so closely together that each bird has around one square foot of floor space (or less) to itself, and many hens living in these structures never see the sun or breathe fresh air.

5. These hens are not "free to roam" anywhere, and their living conditions are neither "natural" nor "pleasant." Quite the opposite. Living in cramped, artificial conditions is highly stressful for hens, and it increases their risk of disease, injury, and death.

6. Defendants' misrepresentations regarding the living conditions of Cage Free hens are intentional and misleading. Merchants often label eggs as "free range" or "pasture raised" when they come from hens with outdoor access and ample space. By labeling Cage Free eggs as "free to roam" and "natural," Defendants attract consumers who are specifically seeking eggs from hens living in "free range" or "pasture raised" environments, even though hens producing Cage Free eggs do not live in such environments. As a result, Defendants are able to sell Cage Free eggs at an unearned premium.

7. The law does not permit this. Accordingly, Defendants must reimburse consumers, like Plaintiffs and members of the below-defined classes, who purchased Cage Free eggs at a premium due to Defendants' false statements about hens' living conditions.

**II. PARTIES**

    **A. Plaintiffs**

        *1. Tim Janecyk*

8. Plaintiff Tim Janecyk is a Tinley Park, Illinois resident. Mr. Janecyk cares about

animal welfare. He and his wife jointly donate to animal welfare causes. And when Mr. Janecyk purchases food products, he attempts to obtain them from sources that treat animals humanely.

9. In the spring of 2024, Mr. Janecyk purchased a carton of Eggland's Best Cage Free eggs from a grocery store in Orland Park, Illinois. He paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

10. Before Mr. Janecyk purchased the eggs, he read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." Mr. Janecyk understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability to forage in the grass, have ample space, and are treated humanely.

11. He would not have purchased the eggs at all, and certainly would not have paid a premium for them, had he known that they do not come from hens that are "free to roam in a pleasant, natural environment."

    *2.  Eric Wilim*

12. Plaintiff Eric Wilim is a Grayslake, Illinois resident. He is a vegetarian who cares deeply about animal welfare. When he purchases food products that come from animals, he seeks to ensure they come from animals that are treated humanely. He is willing to pay premiums for those products.

13. In May 2024, Mr. Wilim purchased a carton of Eggland's Best Cage Free eggs from a store in Grayslake, Illinois. He paid a premium for them compared to conventional eggs and compared to "cage free" eggs sold by other brands.

14. Before Mr. Wilim purchased the eggs, he read the following statement on their packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant,

natural environment." He understood this statement to mean that all hens that produce Eggland's Best Cage Free eggs have outdoor access, have the ability forage in the grass, have ample space, and are treated humanely.

15. Mr. Wilim would not have purchased the eggs at all, and certainly would not have paid a premium for them, had he known that they do not come from hens that are "free to roam in a pleasant, natural environment."

### B. Defendants

16. Defendant Eggland's Best, Inc. is a corporation headquartered and incorporated in Pennsylvania.

17. Defendant Eggland's Best, LLC is a limited liability company headquartered in Pennsylvania and incorporated in Delaware.

18. Defendants Eggland's Best, Inc. and Eggland's Best, LLC both share a principal place of business located at 1400 South Trooper Road, Suite 201, Jeffersonville, Pennsylvania. They are functionally the same entity. Eggland's Best, Inc. co-created Eggland's Best, LLC in 2012 to produce and sell branded eggs. At the time, Eggland's Best, Inc. transferred assets and trademarks to Eggland's Best, LLC. The former owns at least 50 percent equity in the latter. Both companies have overlapping officers, including the same president and CEO.

19. Eggland's Best, LLC directly produces, markets, licenses, distributes, and sells the Cage Free eggs at issue in this lawsuit. It also directly created and approved the language that the eggs' packaging includes (the packaging states, in small print, "produced and distributed by approval from Eggland's Best, LLC"). Eggland's Best, LLC also operates the www.egglandsbest.com domain, and sub-domains, referenced herein. It creates and approves the content on those web-pages.

20. Eggland's Best, Inc. participates in the production, marketing, licensing, distribution, and sale of the Cage Free eggs at issue in this lawsuit. Through its control of Eggland's Best, LLC's equity and acting through the officers it shares with Eggland's Best, LLC, Eggland's Best, Inc. assisted in creating—and provided final approval to—the language that Cage Free eggs' packaging includes and the content of the www.egglandsbest.com domain and sub-domains. By the same mechanisms, Eggland's Best, Inc. has participated in, and continues to participate in, all actions and omissions attributed to Eggland's Best, LLC (i.e., "Eggland") within this complaint. And it has the same knowledge attributed to Eggland's Best, LLC in this complaint.

### III. JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship between the parties. Defendants have sold tens of millions of cartons of Cage Free eggs nationwide, and over one million cartons of Cage Free eggs in Illinois, during the limitations periods applicable to Plaintiffs' and the below-defined classes' claims. Plaintiffs and members of the classes are entitled to recover the full cost, or a portion of the full cost, of each carton of Cage Free eggs that they purchased (which sell for varying prices depending on location, including $4.99 at some locations). They are also entitled to recover punitive damages under the consumer protection statute raised below.

22. Accordingly, this Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d) because this is a class action with more than 100 class members, there is diversity of citizenship among the parties, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

23. This Court has general personal jurisdiction over Defendants because Defendants maintain continuous and systematic contacts with Illinois. Defendants work with Illinois businesses, continuously market their products to Illinois citizens, and continuously sell their products at stores in Illinois. Defendants maintain a web-page on which customers can find the specific locations in Illinois at which they can purchase Defendants' products. www.egglandsbest.com/where-to-buy (last visited July 10, 2024).

24. This Court also has specific personal jurisdiction over Defendants because Defendants have purposefully directed their activities at Illinois and/or purposefully availed themselves of the privilege of conducting business in Illinois, and Plaintiffs' injuries arise out of Defendants' Illinois-related activities. One—of multiple—ways that Defendants market Cage Free eggs in Illinois is by selling them in Illinois stores and including marketing statements on the packaging for those eggs. Plaintiffs read Defendants' marketing statements at stores in Illinois and purchased Cage Free eggs as a result.

25. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district. Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to this lawsuit.

IV. **FACTUAL ALLEGATIONS**

    A. **Modern consumers seek out, and pay premiums for, food products from humanely treated animals.**

26. Modern consumers are aware of, and concerned about, the mistreatment of animals that occurs in "factory farming" systems. "Factory farming involves raising livestock in densely populated environments." Jonathan Anomaly, *What's Wrong With Factory Farming?*, PUBLIC HEALTH ETHICS, Volume 8, Issue 3, November 2015, Pages 246–254,

https://academic.oup.com/phe/article/8/3/246/2362362 (last visited July 9, 2024).

27. Factory farms compete with one another to minimize expenses and provide low-cost food products. Their cost-minimizing efforts often result in poor living conditions for the animals that produce those products.

28. These practices have led to numerous scandals, including scandals involving Eggland producers. In 2016, an animal rights group obtained "undercover footage" showing "sickening animal abuse at several Eggland's Best suppliers." *Hidden-Camera Video Uncovers Animal Abuse And Neglect At Eggland's Best Supplier*, PR NEWSWIRE (June 22, 2016), www.prnewswire.com/news-releases/hidden-camera-video-uncovers-animal-abuse-and-neglect-at-egglands-best-supplier-300288379.html (last visited July 9, 2024). The footage showed "thousands of birds packed into filthy wire battery cages, hardly able to move without crawling over other birds," as well as "[s]everely sick and injured birds" that were "left to suffer and slowly die without proper veterinary care." *Id.*

29. Many consumers prefer to avoid incentivizing factory farming—and the animal suffering it creates—for moral, philosophical, or religious reasons. Accordingly, they do not purchase food products originating from factory farms. Rather, they specifically seek out products that are from animals housed in natural and pleasant conditions, such as conditions in which the animals have outdoor access and ample space.

30. These consumers are now a significant proportion of the public. "Surveys reliably show that the American public cares deeply about farm animals and wants them to be protected from suffering." *Opinion Surveys on Food & Farming Systems*, AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, www.aspca.org/protecting-farm-animals/aspca-surveys (last visited July 9, 2024). In a 2021 consumer survey, "most [respondents] state[d] that it matters

to them that hens do not suffer in the process of producing the eggs they eat." Michelle Sinclair, et al., *Consumer Attitudes Toward Egg Production Systems and Hen Welfare Across the World*, 3 FRONTIERS IN ANIMAL SCIENCE 1, 2 (Oct. 12, 2022), https://www.frontiersin.org/articles/10.3389/fanim.2022.995430/full (last visited July 9, 2024). Similarly, in a 2015 national consumer survey, 84 percent of respondents said that "providing better living conditions for animals" is a "very important or important" issue that they consider "when shopping for food." *Natural Food Labels Survey*, CONSUMER REPORTS NATIONAL RESEARCH CENTER (2015), https://tinyurl.com/28xn3bm8 (last visited July 9, 2024).

31. Because consumers care about animal welfare, they are willing to pay premiums for products from animals that are housed in pleasant and natural conditions. The better the animals' living conditions, the more consumers are willing to pay.

32. Generally, "cage free" eggs sell at prices 7 percent higher than conventional eggs. *See* https://ag.purdue.edu/cfdas/resource-library/egg-prices (showing that, as of January 31, 2024, conventional eggs sold for an average price of $3.87 per dozen whereas cage free eggs sold for an average price of $4.15 per dozen) (last visited July 9, 2024). And the premiums for Eggland's Cage Free eggs are even more exaggerated. Eggland sells "large" Cage Free eggs for up to a 25 percent premium over its "large" conventional eggs, which is over *three times* higher than the average premium for cage free eggs across all brands.[1]

33. Notably, Eggland's premium for its Cage Free eggs is nearly as large as the average premium (over conventional eggs) that is given to eggs bearing a "free range" label (26 percent)

---

[1] *Compare* https://www.marianos.com/p/eggland-s-best-classic-large-white-eggs-12-count/0071514150349?searchType=default_search (selling twelve large conventional Eggland eggs for $3.99) (last visited July 19, 2024), *with* https://www.marianos.com/p/eggland-s-best-cage-free-large-brown-eggs-12-count/0071514151464?searchType=default_search (selling twelve large Cage Free eggs for $4.99).

across all egg brands. *See* https://ag.purdue.edu/cfdas/resource-library/egg-prices (showing that, as of January 31, 2024, free range eggs sold for $4.89 per dozen compared to conventional eggs selling for $3.87 per dozen) (last visited July 9, 2024). This is because consumers equate Eggland's Cage Free eggs with eggs from hens that have outdoor access, like "free range" hens.

**B.     To induce consumers to purchase and pay premiums for its Cage Free eggs, Eggland states that those eggs come from hens "free to roam in a pleasant, natural environment."**

34.    Consumers who equate Eggland's Cage Free eggs with free range eggs do so reasonably. Eggland is aware that certain consumers care about hens' living conditions, and it specifically advertises its Cage Free eggs to appeal to those consumers. Next to the Nutrition Facts label on the packaging for Cage Free eggs, Eggland states: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." www.egglandsbest.com/product/cage-free-eggs (scroll to second image) (last visited July 9, 2024). The packaging is shown below:



35. Eggland has included this language uniformly on the packaging for all Cage Free eggs since at least April 2020. https://tinyurl.com/4cnzxfua (scroll to second image) (April 4, 2020 snapshot from Eggland website showing packaging for Cage Free eggs) (last visited July 9, 2024).

**C.   Hens producing Eggland's Cage Free eggs are not, in fact, "free to roam in a pleasant, natural environment."**

36. It is not true that "[e]very hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." In fact, every part of that claim is false or misleading.

*1.   Hens that produce Eggland's Best Cage Free eggs do not live in a "natural" environment.*

37. To begin, hens that produce Cage Free eggs do not live in a "natural" environment. None of them ever have outdoor access. And many or all of them live in massive, industrial egg-laying compounds, such as the one shown below:



External image of facility run by Herbruck's Poulty Ranch, an Eggland supplier.
Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).

38. The facilities at these compounds are specifically constructed to prevent hens from gaining any exposure to the natural world. As a representative of one of Eggland's suppliers has put it, the facilities are designed "to keep the outside out, and the inside in" in the name of "biosecurity." www.youtube.com/watch?v=pXwbTtQWaqg (1:43–1:48) (last visited July 9, 2024).

39. The result is that the hens are kept in completely artificial environments. They live in windowless rooms made of concrete, metal, and dirt. They breathe filtered air, they do not see the sun, and they have no access to grass or other natural vegetation.

40. These facilities are the opposite of "natural," and they also prevent hens from exhibiting their natural behaviors. Hens are "inquisitive" and "energetic" creatures that require environmental stimulation to flourish. *Adopting and Caring for Backyard Chickens*, HUMANE SOCIETY, www.humanesociety.org/resources/adopting-and-caring-backyard-chickens (last visited July 9, 2024) (hens should "have free access to grass and other vegetation to engage in natural pecking, scratching, and foraging behaviors" and "it is important to provide plenty of space, giving them as much room as possible to express natural behavior outdoors"). Instinctually, they spend between 60 percent and 75 percent of their daylight hours roaming and foraging in grass or vegetation. *A Day in the Life of a Laying Hen*, GLOBAL ANIMAL PARTNERSHIP, https://globalanimalpartnership.org/about/news/post/day-in-the-life-of-a-laying-hen (last visited July 9, 2024) ("Research has shown that hens living in a more naturalistic environment were observed to spend up to 75% of daylight hours foraging – a behavior that includes scratching and pecking at the ground and vegetation in search of food."); Brigid McCrea & Bethany Baker, *Common Backyard Chicken Behaviors*, ALABAMA A&M AND AUBURN UNIVERSITIES' EXTENSION, https://tinyurl.com/yc3ee8hh (last visited July 9, 2024) ("Chickens spend around 61 percent of their active time on foraging and feeding behavior."). To do so, they need access to vegetation and ample space to roam, neither of which are available in the facilities at which Cage Free hens live. *See Adopting and Caring for Backyard Chickens*, HUMANE SOCIETY, www.humanesociety.org/resources/adopting-and-caring-backyard-chickens (last visited July 9, 2024).

> 2. *Hens that produce Eggland's Best Cage Free eggs do not live in "pleasant" environments.*

41. The facilities at which Cage Free hens live also are not "pleasant." They often cram hundreds of thousands of hens into a single building and devote approximately one square foot (or less) of floor space to each bird. Images from such facilities are below.



June 2021 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for Eggland's Best. Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).



June 2021 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for Eggland's Best. Source: https://www.youtube.com/watch?v=pXwbTtQWaqg (last visited July 9, 2024).



November 2015 image from cage free farm run by Herbruck's Poultry Ranch, a supplier for Eggland's Best. Source: https://www.youtube.com/watch?app=desktop&v=JqIL_5IY_Co (last visited July 9, 2024).



November 2009 image from cage free farm run by Morning Fresh Farms, a supplier for Eggland's Best. Source: https://www.denverpost.com/2009/12/15/eggs-cracking-the-mystery (last visited July 9, 2024).

42. Living in facilities like this, with high population or "stocking" density, is highly unpleasant for hens.

43. Studies show that "high stocking density increase[s] chronic stress" among hens. Andrew M. Campbell, et al., *Measuring Chronic Stress in Broiler Chickens: Effects of Environmental Complexity and Stocking Density on Immunoglobulin-A Levels*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (June 22, 2024), https://tinyurl.com/bdd6ya73 (last visited July 9, 2024).

44. And high stocking density leads to other issues, including "lower feed intake, stunted growth, decreased crouching, walking, preening . . . listlessness, and an increased risk of health problems." Mishkatul Zabir, et al., *Impacts of Stocking Density Rates on Welfare, Growth, and Hemato-Biochemical Profile in Broiler Chickens*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (Nov. 4, 2021), https://tinyurl.com/yc3jtkxn (last visited July 9, 2024).

45. High stocking density also increases the risk that hens will fight amongst themselves. As a worker for an Eggland supplier has admitted, in its cage free barns, hens "can

pile on themselves . . . they can wind up piling on top of each other" and they are sometimes "injured or killed by their pen-mates" as a result. https://tinyurl.com/abcbn75n (last visited July 9, 2024).

### 3. Hens that produce Eggland's Best Cage Free eggs are not "free to roam."

46. Finally, Cage Free hens are not "free to roam," as Eggland claims. Consumers reasonably associate the phrase "free to roam" with hens that have outdoor access and ample space. That is why eggs from hens that *do* have outdoor access and ample space are often labelled "free to roam." *E.g.*, https://vitalfarms.com/eggs ("All our pasture-raised eggs are laid by hens that are free to roam on healthy pasture land all year long."); https://www.nelliesfreerange.com/products/free-range-eggs (showing carton label for free range eggs stating "our hens have free range to roam") (last visited July 9, 2024). And it is why brands—aside from Eggland—that make "roaming" claims for indoor-only hens explicitly qualify those claims to avoid misleading consumers. *E.g.*, www.saudereggs.com/product/cage-free-brown (stating that "Cage-Free chickens" are "free to roam" and qualifying that "[t]hey are kept in large heated and air-cooled growing houses *with no outdoor access*"; showing packaging for "nest eggs" stating that they are "from hens who have the freedom to roam *the henhouse*") (emphasis added) (last visited July 9, 2024).

47. "Free to roam" also closely resembles other common egg labels, like "free range." Free range eggs, themselves, come from hens with outdoor access. By claiming its Cage Free eggs come from hens that are "free to roam" (in a "natural" and "pleasant" environment, no less) while omitting that those hens have no outdoor access and lack ample space, Eggland associates its Cage Free eggs with free range eggs and misleads consumers.

**D. Eggland's misrepresentations regarding the living conditions of hens producing cage free eggs are knowing, willful, and intentional.**

48. Eggland knows that hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment," as Cage Free eggs' packaging claims. Eggland has access to annual audits of the facilities that produce Cage Free eggs. *See* www.egglandsbest.com/faqs/animal-welfare ("All Eggland's Best production facilities are audited annually to ensure that flocks are healthy and have sufficient space, light, ventilation, water, and feed and are protected from injury.") (last visited July 9, 2024). These audits demonstrate the above-described living conditions for Cage Free hens, which are not "free," "pleasant," or "natural."

49. Relatedly, Eggland knows that Cage Free hens do not have outdoor access. It admits that on a sub-page of its website. https://www.egglandsbest.com/faqs/animal-welfare (stating that hens producing Eggland's Cage Free eggs "do not have outdoor access like free-range hens") (last visited July 9, 2024). Yet it omits this information from Cage Free eggs' packaging.

**V. CLASS ACTION ALLEGATIONS**

50. Plaintiffs seek to represent a class (the "Nationwide Class") of all individuals who, in the United States of America, purchased Eggland's Best Cage Free eggs at any time within the limitations period applicable to the below-defined claims of the Nationwide Class.

51. Plaintiffs also seek to represent a class (the "Illinois Class" and, collectively with the Nationwide Class, the "Classes") of all individuals who, in the State of Illinois, purchased Eggland's Best Cage Free eggs at any time within the limitations period applicable to the below-defined claims of the Illinois Class.

52. The Classes meet the certification prerequisites of Federal Rule of Civil Procedure 23(a). Their members are too numerous for practicable joinder, given that Eggland has sold over

one million cartons of Cage Free eggs to hundreds of thousands or millions of consumers in Illinois, and has sold tens of millions of cartons of Cage Free eggs to millions of consumers nationwide, within the applicable limitations periods. There are also questions of law and fact common to the Classes, such as whether the representations and omissions Eggland makes regarding its Cage Free eggs are, in fact, false or misleading. Plaintiffs' claims are typical of the Classes' claims because they arise from the same alleged misrepresentations and omissions, and they depend on the same legal theories. Further, Plaintiffs and their counsel are adequate representatives of the above-defined Classes. Plaintiffs have suffered the same injury as members of the Classes they seek to represent (they purchased a product at a price artificially inflated by Eggland's misrepresentations and omissions); Plaintiffs have no conflicts of interest with members of the Classes they seek to represent; and Plaintiffs' counsel is highly experienced in class action litigation, including consumer class action litigation.

53. The Classes also meet the certification requirements of Federal Rule of Civil Procedure 23(b)(3). Questions of law and fact common to the Classes' members predominate over any questions affecting only individual members, given that this case hinges on whether the uniform statements made on Eggland's Cage Free eggs' packaging are false or misleading. And a class action is superior to other available methods for adjudicating this controversy. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the many Cage Free eggs sales that Eggland has made in Illinois and nationwide.

## VI. CAUSES OF ACTION

54. Plaintiffs seek the following relief based on the following causes of action.

### First Cause of Action
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (Brought by Plaintiffs on Behalf of the Illinois Class)

55. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this

Complaint.

56. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") declares unlawful "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS § 505/2. It also makes it unlawful to "represent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." 815 ILCS § 505/2; 815 ILCS § 510/2(a)(5).

57. Defendants violated the Consumer Fraud Act. They stated the following on Cage Free eggs' packaging: "Every hen selected to lay Eggland's Best Cage Free eggs is free to roam in a pleasant, natural environment." That statement was not true. And it was also misleading based on what it omitted. Defendants failed to state, on Cage Free eggs' packaging, that hens producing Cage Free eggs do not have access to the outdoors, natural vegetation, fresh air, or sunlight. Defendants also failed to state that hens producing Cage Free eggs are kept in facilities providing them with approximately one square foot (or less) of floor space.

58. Defendants' misrepresentations and omissions caused injury to Plaintiffs and the Illinois Class. Those misrepresentations and omissions permitted Defendants to sell Cage Free eggs at prices higher than Defendants otherwise would have been able to sell them. This heightened price was charged both to those who saw and relied on Defendants' misrepresentations and omissions and those who did not. Thus, Plaintiffs and the Illinois Class suffered injury in the form of a price premium.

59. Defendants intended for consumers, including Plaintiffs and members of the Illinois Class, to rely on their misrepresentations and omissions so that they would purchase Cage

Free eggs and do so at a price premium. Defendants also made their misrepresentations and omissions knowingly. They should have—and in fact did—know that the hens producing Cage Free eggs are not "free to roam in a pleasant, natural environment."

60. Defendants' misrepresentations and omissions were both deceptive and unfair. They offended public policy; they were immoral, unethical, oppressive, and/or unscrupulous; and they caused substantial injury to consumers.

61. As a result, Plaintiffs and members of the Illinois Class each seek and are entitled to: (a) actual damages; (b) punitive damages; (c) reasonable costs and attorney's fees; and (d) any other relief the Court deems proper. 815 ILCS § 505/10a.

## Second Cause of Action
## Unjust Enrichment/Restitution
### (Brought by Plaintiffs on Behalf of the Nationwide and Illinois Classes)

62. Plaintiffs incorporate by reference and reallege here all foregoing paragraphs of this Complaint.

63. Defendants have been unjustly enriched by their misrepresentations and omissions regarding Cage Free eggs. They have sold more Cage Free eggs than they would have sold absent those misrepresentations and omissions. And they have sold those eggs at higher prices than they could have charged absent their misrepresentations and omissions.

64. Defendants' enrichment has been to Plaintiffs' and the Classes' detriment. Plaintiffs and members of the Classes would not have purchased Cage Free eggs but for Defendants' misrepresentations and omissions. Certainly, Plaintiffs and members of the Classes would not have paid prices as high but for Defendants' misrepresentations and omissions.

65. There is no justification for Defendants' misrepresentations and omissions or for Defendants' resulting enrichment. Defendants' misrepresentations and omissions were knowingly

deceptive.

66. It would violate fundamental principles of justice, equity, and good conscience to permit Defendants to retain the benefits of their misrepresentations and omissions at the expense of Plaintiffs and members of the Classes.

67. As a result, Plaintiffs and members of the Classes each seek and are entitled to restitution, disgorgement, and any other relief the Court deems proper.

## **PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, demand a jury trial for all claims so triable and respectfully request that the Court grant the following relief:

A. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as class representatives of the above-defined Classes and designation of counsel of record as Class Counsel for the Classes;

C. A declaratory judgment that the practices complained of herein are unlawful;

D. An award of actual damages, punitive damages, restitution, and other relief provided for under the foregoing cause of action as set forth above;

E. An award of attorneys' fees and costs incurred in this action, including expert fees;

F. Pre-judgment and post-judgment interest, as provided by law;

G. Reasonable service awards for Plaintiffs; and

H. All other legal and equitable relief that this Court deems necessary, just, and proper.

Dated: July 23, 2024　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ John J. Frawley*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　**One of Plaintiffs' Attorneys**

Douglas M. Werman
John J. Frawley
**WERMAN SALAS P.C.**
dwerman@flsalaw.com
jfrawley@flsalaw.com
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Phone No.: (312) 419-1008

Pete Winebrake (*pro hac vice* motion forthcoming)
Michelle Tolodziecki (*pro hac vice* motion forthcoming)
**WINEBRAKE & SANTILLO, LLC**
pwinebrake@winebrakelaw.com
mtolodziecki@winebrakelaw.com
715 Twining Road, Suite 211
Dresher, PA 19025
Phone No.: (215) 866-1551

*Attorneys for Plaintiffs and the Putative Classes*