IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIM JANECYK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 24-cv-06222 |
| v. | Judge Franklin U. Valderrama |
| EGGLAND'S BEST, INC., et al, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are consumers who are concerned about the poor living conditions of animals raised in "factory farms." Plaintiffs bought Eggland's Best, Inc.'s and Eggland's Best, LLC's (collectively Eggland) cage free eggs based on the representation on Eggland's packaging that the hens producing the eggs were "free to roam in a pleasant, natural environment." R.[1] 11, Cons. Compl. ¶ 10. As it turns out, Eggland's hens have no access to the outdoors, and are instead packed into windowless compounds made of concrete, metal, and dirt. *See* Cons. Compl. Plaintiffs sued Eggland, individually and on behalf of all others similarly situated, asserting a variety of consumer protection claims. Cons. Compl. Eggland moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). R. 20, Mot. Dismiss. For the following reasons, the Court grants the motion to dismiss in part and denies the motion in part.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background[2]

Plaintiffs are consumers that care about animal welfare, which is reflected in their purchasing decisions. *See e.g.*, Cons. Compl. ¶¶ 8, 12, 16.[3] Consequently, each of them is willing to pay premium prices for products from companies that treat their animals humanely. *Id.* ¶ 8. This concern for animal welfare tracks a broader trend in consumer purchasing habits. Consumers are increasingly aware of and concerned about what is known as "factory farming," or the raising of livestock in densely populated environments for cost-cutting reasons. *Id.* ¶¶ 85–86, 88–90. These consumers are willing to pay higher prices for eggs that do not come from hens raised in factory farming conditions. *Id.*

Eggland, Plaintiffs allege, is aware of consumer demand for humane products and specifically advertises its cage free eggs to appeal to consumers like Plaintiffs. *Id.* ¶ 94. Since April 2020, Eggland has included the following statement on the inside of its "Cage Free" egg packaging: "Every hen selected to lay Eggland's Best Cage Free

---

[2]The Court takes the following allegations as true at this stage and makes all reasonable inferences in favor of the Plaintiffs. *See* R. 11, Cons. Compl.; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

[3]While Eggland does not challenge the Court's subject-matter jurisdiction, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Word Seed Church v. Vill. of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024) (citation omitted). This Court has subject matter jurisdiction under the Class Action Fairness Act (CAFA) 28 U.S.C. § 1332(d). Plaintiffs are citizens of California, New York, and Oregon, among other states. R. 23, Joint Status Report, at 2 (listing Plaintiffs' domiciles); *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002) ("Citizenship for purposes of the diversity jurisdiction is domicile."). Defendant Eggland's Best, Inc. is a corporation headquartered and incorporated in Pennsylvania. Therefore, it is a citizen of Pennsylvania. *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021) (a corporation is considered a citizen of its state of incorporation and its principal place of business). Thus, at least one Defendant is a citizen of a different state than at least one Plaintiff, and minimal diversity is satisfied. Further, Plaintiffs allege that there are over 100 members of the class, and the amount in controversy across the entire class is greater than $5 million. Compl. ¶ 82.

eggs is free to roam in a pleasant, natural environment." *Id.* ¶¶ 94–95.



*Id.* Ordinarily, "cage free" eggs sell at prices seven percent higher than conventional eggs. *Id.* ¶ 91. Eggland sells its large Cage Free eggs for up to a twenty-five percent premium over its large conventional eggs. *Id.* ¶ 92. "Free range" eggs sell at an even higher premium of twenty-six percent. *Id.* ¶ 93. Eggland, according to Plaintiffs, charges prices for its "cage free eggs" that are more in line with the prices of "free range" eggs. *Id.*

Each Plaintiff at some point purchased Eggland's cage free eggs in part based on the representation that Eggland's hens are "free to roam in a pleasant, natural

environment," and were willing to pay Eggland's premium prices based on this representation. *See id.* ¶ 11. In fact, however, Eggland's hens are not free to roam in a pleasant, natural environment. Eggland's hens, while technically considered "cage free," are actually kept in industrial "egg-laying compounds." *Id.* ¶ 97. These compounds are not "natural," Plaintiffs say. In these compounds, hens have no exposure to the outside world. *Id.* ¶ 98. The hens have no access to grass, natural vegetation, or sunshine, they breathe filtered air, and they live in windowless rooms made of concrete, metal, and dirt. *Id.* ¶ 99.

The compounds, Plaintiffs allege, are not "pleasant." Up to hundreds of thousands of hens are crammed into a single compound, which results in chronic stress for the hens. *Id.* ¶¶ 101–103. The tight space and stress results in fighting, stunted growth, lowered food intake, increased risk of health problems, and pile-ups that can be deadly for the hens. *Id.* ¶ 104–105. According to Plaintiffs, an investigation into one of Eggland's facilities revealed that some hens were sickly and left to suffer and die without proper care. *Id.* ¶ 87. Finally, with square-footage per hen as low as one foot in these compounds, they are indeed not "free to roam" as the package suggests. *Id.* ¶¶ 101, 106. This representation is particularly misleading, because it mimics "free range"—a label that requires the hens to have access to outdoor space under federal regulation. *Id.* ¶¶ 107–108.

The way Plaintiffs see it, Eggland intentionally misrepresents that its hens are "free to roam in a pleasant, natural environment" to charge higher prices from consumers like Plaintiffs. Based on these terms' common usage, dictionary

4

definitions, and government guidelines, consumers associate the phrases "free to roam," "pleasant," and "natural" with conditions unlike the those in which Eggland's hens live. *Id.* ¶ 111. Further, although this statement is on the inside of the egg box, studies show that 80% of consumers "always" open an egg carton before purchasing it. *Id.*

Plaintiffs sued Eggland, asserting nationwide class claims, as well as claims on behalf of classes of similarly-situated consumers in California (bringing claims under the California False Advertising Law (Count I), *Id.* ¶¶ 134–139, the California Legal Remedies Act, *Id.* ¶¶ 140–147 (Count II), the California Unfair Competition Law, *Id.* ¶¶ 148–153 (Count III)); Washington, D.C. (D.C. Consumer Protection Procedures Act, *Id.* ¶¶ 154–159 (Count IV)); Illinois (Illinois Consumer Fraud and Deceptive Business Practices Act, *Id.* ¶¶ 160–166 (Count V)); Nevada (Nevada Deceptive Trade Practices Act, *Id.* ¶¶ 167–172 (Count VI)); New Mexico (New Mexico Unfair Practices Act, *Id.* ¶¶ 173–178 (Count VII)); New York (Section 349 of the New York General Business Law, 179–184 (Count VIII), Section 350 of the New York General Business Law, *Id.* ¶¶ 185–190 (Count IX)); Oregon (Oregon Unlawful Trade Practices Act, *Id.* ¶¶ 191–196 (Count X)); Pennsylvania (Pennsylvania Unfair Trade Practices and Consumer Protection Law, *Id.* ¶¶ 197–202 (Count XI)); Virginia (Virginia Consumer Protection Act, *Id.* ¶¶ 203–208 (Count XII)); and Washington (Washington Consumer Protection Act, *Id.* ¶¶ 209–214 (Count XIII)). Finally, Plaintiffs bring claims for unjust enrichment on behalf of the nationwide class. *Id.* ¶¶ 215–220 (Count XIV). Eggland's fully-briefed motion to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Hallinan*, 570 F.3d at 820. Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to

jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44). The Court begins with Eggland's 12(b)(6) motion, as its 12(b)(1) motion only challenges whether Plaintiffs alleged a misleading claim and Plaintiffs' standing for injunctive relief.

## Analysis

### I.      Rule 12(b)(6) Motion

As an initial matter, Eggland asks the Court take judicial notice of certain information. R. 20-1. First, Eggland's "cage free," "pasture raised," and "free range" packaging. Ex. 1, 2, 3, R. 20-3. Second, a page on Eggland's website showing the products it sells. Ex. 4, R. 20-3. Third, various state regulations, statutes, and administrative codes. R. 20-3. Last, the United Egg Producer's and American Egg Board's definitions of "cage free" as written on their websites. R. 20-3. Plaintiffs do not address this request and therefore, waive any response. *See In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). Plaintiffs, however, refer to the packaging and statutes themselves in their response.

The Court "may judicially notice a fact that is not subject to reasonable dispute because it" is either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Further, "[i]t is well

7

settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citation omitted).

The packaging of the eggs purchased by Plaintiffs—that is, the packaging for Eggland's *Cage Free* eggs—is both referred to in the complaint and central to the Plaintiffs' claims. Indeed, a picture of the packaging is included in the complaint. Accordingly, the Court considers the packaging for the cage free eggs in resolving the motion. The packaging, however, of Eggland's "pasture raised" and "free range" eggs, are not referred to in the complaint and are not central to the claims here. The Court, therefore, may not consider this exhibit in resolving the motion.

As for the state regulations, "[a] court may take judicial notice of facts of 'common knowledge' in ruling on a motion to dismiss." *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (citation omitted). "[M]atters of public record such as state statutes . . . fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice." *Id*. Accordingly, the Court takes judicial notice of the various state regulations. However, the United Egg Producer's and American Egg Board's definitions of "cage free" as written on their websites are not necessarily "common knowledge" or free from dispute, like a state statute or court decision would be. Thus, the Court may not take judicial notice of them.

The Court, having addressed Eggland's request for judicial notice, now turns to Eggland's motion to dismiss under Rule 12(b)(6) for failure to state a claim.

8

Eggland moves to dismiss Plaintiffs' claims because: Plaintiffs fail to plead their fraud claims with particularity; no reasonable consumer could find the statement that its hens are "free to roam in a pleasant, natural environment" misleading; and Plaintiffs fail to state a claim for unjust enrichment. The Court addresses each argument in turn.

### A. Rule 9(b)

Eggland moves to dismiss Plaintiffs' claims for failure to plead their claims with the particularity required by Federal Rule of Civil Procedure 9(b). Mem. Mot. Dismiss at 7. When a complaint alleges fraud, asserts Eggland, it is subject to the heightened pleading requirement of Rule 9(b). That is, the plaintiff is required to plead the who, what, when, where and how of the fraud, which Plaintiffs fail to do. *Id*. Here, the complaint fails to satisfy this standard, from Eggland's point of view, because it fails to allege where the products were purchased and when they were purchased. *Id*.

Plaintiffs counter that Rule 9(b) is inapplicable because Rule 9(b) only applies for fraud-based claims and their claims do not only sound in fraud. Resp. at 25. Plaintiffs maintain that consumer protection statutes have both "fraud" and "non-fraud" prongs, and Plaintiffs bring their claims under both. Resp. at 25. Therefore, only their fraud-based claims must satisfy Rule 9 (b), which they do. Plaintiffs contend that they have provided sufficient details to inform Eggland of the specific activity alleged to constitute the fraud, and have pled the who (Eggland), the what (the statement on the carton), when (in the month and year stated for each plaintiff), where (on the carton at the store), and how. Resp. at 25–26. Plaintiffs argue that Rule 9(b) does not

9

require them to allege which particular store each Plaintiff was in, or on what exact date they purchased the eggs. *Id.* (citing *Camasta v. J.A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019)). The Court agrees.

Rule 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Typically, that means that the complaint must specifically allege the "who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737. A consumer protection claim that sounds in fraud must meet the heightened pleading standard of Rule 9(b). *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (the ICFA "allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but . . . [i]f the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies"); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (because the "common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the [complaint] must satisfy . . . the heightened pleading requirements of Rule 9(b)").

Plaintiffs are correct that consumer protection statutes, such as the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1, *et seq* (ICFA) prohibit both "unfair" and deceptive" acts or practices. 815 ILCS 505/2. It is also the case that "[w]hile allegations of unfair acts under the ICFA need only satisfy the notice pleading standard of Rule 8(a), allegations of deceptive acts sound in fraud and are subject to Rule 9(b)'s heightened pleading standard." *Smith v. NVR, Inc.*, 2018

WL 6335051 at *2 (N.D. Ill. Dec. 5, 2018) (internal citation omitted). Here, Plaintiffs' complaint not only alleges unfair conduct, but deceptive acts as well. Therefore, the latter must satisfy Rule 9(b)'s heightened standard. The Court finds that it does. Plaintiffs have sufficiently pled the who, what, where and when of Eggland's fraud. Starting with the who, Plaintiffs allege Eggland; the what, Eggland's false and misleading advertising of eggs; the how, that the eggs come from hens who are "free to roam in a pleasant, natural environment" when in fact they are not; the where, Eggland's labels; and the when, since April 2020 to the present. As for Eggland's assertion that Plaintiffs must plead where and when the products were purchased, the Court agrees with Plaintiffs that Rule 9(b) contains no such requirement. Notably, Eggland does not cite any binding authority in support of this proposition. No matter because case law goes in the other direction.

As Plaintiffs correctly point out, in *Camasta,* the Seventh Circuit found that Rule 9(b) did not require a plaintiff to "provide the precise date, time, and location that he saw the advertisement or every word that was included on it." *Camasta*, 761 F.3d at 737. In *Vanzant*, the Seventh Circuit held that the plaintiff properly alleged the "when" and "where" of the fraud where the plaintiff alleged he had viewed the statement at some point "before purchasing [the product] from PetSmart in November 2013 and thereafter. Nothing more is needed." *Vanzant*, 934 F.3d at 739.

Here, each of the Plaintiffs allege that they relied on a specific statement made by Eggland on its product, and that they purchased that product at a grocery store, during a specific month and year, in a specific town. This sufficiently meets the

11

pleading requirements of Rule 9(b).

### B. The "Reasonable Consumer" Standard

In Counts I through XIII, Plaintiffs assert claims under various state consumer protection laws. Although they are different, each of these statutes bars relatively similar conduct. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (surveying state statutes "known as 'Little-FTC Acts' because they are patterned on the Federal Trade Commission Act (FTCA)"). "These statutes all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers," and "[t]he core prohibitions of these laws are interpreted for the most part interchangeably." *First citing Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (applying California, Illinois, New York, Oregon law), *then citing Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020) (applying California, Illinois, New York law). Consequently, all of these claims have one element in common: the plaintiff must allege that the advertisement misleads a "reasonable consumer." *See e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (addressing California False Advertising Law, the California Legal Remedies Act, and the California Unfair Competition Law); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) ("These statutes 'all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers[.]'").[4]

---

[4]"When a federal court sits in diversity, 'we look to the choice-of-law rules of the forum state to determine which state's law applies' to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). "Illinois follows the Restatement (Second) of Conflicts of Laws and uses the 'most significant relationship' test to decide choice-of-law issues." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) (citing *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). In the consumer protection context, "where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies." *Id.* (citing

The reasonable consumer standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020). A statement must also be read in context. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018) (applying ICFA) ("An allegedly deceptive act must be viewed 'in light of *all the information* available to plaintiffs.'").

Eggland argues that a reasonable consumer would not be misled by the statement because (1) the eggs are clearly labeled "cage free," and Plaintiffs do not allege that the eggs are not, in fact, "cage free" under the relevant state regulations; (2) the statement does not suggest that the eggs are "free range" or "pasture raised"; (3) the statement is, in fact, true and not misleading when viewed in context; and (4) in the alternative, the statement is mere puffery. Mem. Mot. Dismiss at 6.

In support, Eggland points to the relevant states' laws which include indoor hens within the definition of "cage free," including indoor hens who have no outdoor access. Mem. Mot. Dismiss at 3 (citing Ariz. Rev. Stat. § 3-710; Ariz. Admin. Code §§ 3-2-901, 3-2-907; Calif. Health & Safety Code § 25991; Colo. Rev. Stat. § 35-21-202; 330 Code of Mass. Reg. § 35.02; Michigan Comp. Laws § 287.746; Nev. Rev. Stat. 583.213; Or. Rev. Stat. § 632.835; Utah Code 4-4a-102; Rev. Code Wash. § 69.25.020). Many states also specify that the usable floor space be around one square foot so the

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 148(1) (1971)). Plaintiffs both received and relied on the representation at issue in various states. Thus, the Court must apply the substantive law of multiple states in deciding Plaintiff's state law claims. However, while the law of multiple jurisdictions applies here, Defendants assert, and Plaintiffs do not dispute, that the laws with respect to the "reasonable consumer standard" are substantially similar across states, such that the Court can decide this issue as to all classes. Mem. Mot. Dismiss at 8; *see generally* Opp.

hens can "roam" indoors. Mem. Mot. Dismiss at 4 (citing e.g. Ariz. Admin. Code § 3-2-907). Further, Eggland points out that some state statutes define "cage free" as an environment that contains "enrichments that allow the hens to *exhibit natural behavior*, including, at a minimum, scratch areas, perches, nest boxes and dust bathing areas." *Id.* (citing Or. Rev. Stat. § 632.835; Rev. Code Wash. 69.25.020; Nev. Rev. Stat. 583.213 (emphasis added)). Eggland argues that its products not only meet the definitions of cage free, but the hens are also "free to roam" in a "natural" environment, as defined by state law. Further, the packaging does not represent the eggs to be "free range" or "pasture raised," which would insinuate outdoor access. Plaintiffs' attempt to render clearly labeled egg products as "deceptive", submits Eggland, fails. *Id.* at 8 (citing *Sorkin v. Kroger Co.*, 2024 WL 3673719 (N.D. Ill. Aug. 6, 2024)). Therefore, concludes Eggland, no reasonable consumer would be misled by the statement, because the eggs are labeled as "cage free," rather than "free range" or "pasture raised," and consumers cannot ignore a label's definition.

Plaintiffs first respond that the "reasonable consumer analysis" is premature at the motion to dismiss stage, as it is a fact-specific inquiry. Resp. at 8. The Court agrees. *Bell*, 982 F.3d at 479 ("whether a claim is either 'false' or 'misleading' is an issue of fact rather than law"). However, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477. But for the reasons stated below, that is not the case here.

True, a reasonable consumer cannot ignore common meanings or definitions of

certain terms. Mem. Mot. Dismiss at 10 (citing *Becerra v. Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019). Here, Plaintiffs do not deny that the eggs are labeled as "cage free," or that the eggs in fact comport with the state definitions of cage free. But a reasonable consumer, according to Plaintiffs, would only take this label to mean that the hens are free from cages. Resp. at 2. Rather, it is the *additional* statement that the hens are also "free to roam" in a "natural" and "pleasant" environment which a reasonable consumer would take to mean that the hens are free to roam outdoors to some extent, or at least in an environment that is pleasant and natural. At the very least, the consumer would not expect the hens to be kept in packed, metal and concrete facilities, and in unhealthy conditions. *Id.* In support, Plaintiffs point out that the statutes to which Eggland cites state that "cage free" can refer to hens that live both indoors *and* outdoors. *Id.* Thus, the label "cage free" does nothing to dispel the notion created by the additional statement that the hens are also free to roam in a natural environment. *Id.*

Eggland cites *Sorkin* in support of its proposition that its packing is not misleading to a reasonable consumer. In *Sorkin*, the court dismissed claim that the label "Farm Fresh Eggs" was misleading, where hens were kept in industrial cages. 2024 WL 3673719 at *1. Plaintiff interpreted "Farm Fresh" to mean that the hens were "living on farms, with open green space, grass, hay and straw," "pecking and playing in the fields." *Id.* In other words, he argued that "farm fresh" and "cage free" were "one and the same." *Id.* The court rejected plaintiff's interpretation, noting that "the term 'farm fresh' does not say or suggest anything about whether the eggs came

from a hen that was caged or not." *Id.* at \*4. Further, the court noted that consumers have plenty of context in the supermarket for what certain terms may mean, and "[i]n contrast to 'farm fresh,' terms such as 'cage-free', 'free-range', and 'pasture-raised' *do* say something about the living conditions of the hens." *Id.* at \*5. "Rather, 'Farm Fresh Eggs' means precisely what it says: the eggs are fresh from a farm." *Id.*

Plaintiffs counter that *Sorkin* is distinguishable as Eggland's descriptor here is much more specific than the "farm fresh" label in *Sorkin*. Eggland asserts that the hens are free to roam in a natural, pleasant environment—a statement that, when taking inferences in favor of Plaintiffs, is at odds with the way Eggland's hens are housed, especially in light of the government definitions, dictionary definitions, and common meaning of "cage free," "natural," "pleasant" and "roam."

Plaintiffs point to courts that have held "free run" and "free range" to be misleading under the reasonable consumer standard when applied to products where hens are kept in similar industrial compounds to the ones alleged here. Resp. at 7; *Mogull v. Pete & Gerry's Organics, LLC*, 588 F. Supp. 3d 448 (S.D.N.Y. 2022) (denying motion to dismiss where eggs were marketed as "free-range," including statements that hens could forage on grass, but were indoor-only hens); *Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at \*9 (N.D. Cal. Aug. 3, 2021) (finding "the term 'free-run,' on its own, could reasonably be read to imply that the chickens . . . can freely run outside," where the "label also depicts chicken running freely on a spacious, grassy, and outdoor field without any disclaimer that those are not the chickens used"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226

16

(S.D.N.Y. 2020) (denying motion to dismiss, finding term "outdoor forage" and images of hens frolicking in fields could be misleading to reasonable consumer where hens were kept in industrial compounds). Particularly on point, according to Plaintiffs, is *Friends of Earth v. Sanderson Farms, Inc.*, 2018 WL 7197394 (N.D. Cal. Dec. 3, 2018), where the court found that plaintiffs had sufficiently pled that the label "100% Natural" was misleading, because "a reasonable consumer understands the use of 'natural' to mean a host of expectations, including the fair inference that the animal was allowed to move outdoors." *Id.* at *5. Consequently, because the defendant's "chickens allegedly are kept indoors, and none of the advertisements bearing the '100% Natural' slogan disclaim the fact that the chickens never go outside, [p]laintiffs have sufficiently plead that [defendant] actually raises its chickens in conditions that are contrary to what [defendant] leads consumers to believe." *Id.*

Here, viewing all reasonable inferences in favor of Plaintiffs, the Court finds that a reasonable person would be misled by this statement. Plaintiffs plausibly allege that a reasonable person would take "free to roam" in a "natural" and "pleasant" environment together with the assertion that the hens are not kept in cages to mean that the hens would have some outdoor access. This also comports with the dictionary definitions and common meanings of "free to roam," "natural," and "pleasant"; the phrase "free to roam" also mimics the "free range" and "free roaming" designations. Compl. ¶¶ 106–108, 111. In fact, under Eggland's own proposed statutory definitions, a "cage free" hen can include hens without outdoor access, meaning the statement does not clarify the additional representation. In short, the

Court finds that Plaintiffs have sufficiently alleged that a reasonable person could find the statement to be misleading, even considering the "cage free" designation, because the "cage free" designation does nothing to correct this additional representation. Eggland's cited cases are also distinguishable for this reason. *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696 (N.D. Ill. 2023) (dismissing claims where plaintiff alleged front label was misleading, but reasonable person would not be misled by the front label); *Alce v. Wise Foods, Inc.*, 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) (finding reasonable person could not be misled by amount of air in bag of chips where the weight of the chips was accurately disclosed on the front).

Alternatively, Eggland argues that a reasonable consumer would not find the statements deceptive as they are mere puffery. Mem. Mot. Dismiss at 19. Plaintiffs retort that the living conditions of hens are verifiable facts, not unactionable puffery. Resp. at 23–24. The Court agrees. "Puffery encompasses 'vague, highly subjective, or exaggerated commercial statements or advertisements' that are nonactionable." *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 672 (N.D. Ill. 2024) (citing *Evolve Biosystems, Inc. v. Abbott Lab'ys*, 2022 WL 846900, at *5 (N.D. Ill. Mar. 22, 2022)). "Statements are not puffery if they make 'objective' and verifiable claims and are 'specific enough to induce consumer reliance.'" *Id.* (citation omitted). "Examples of puffery include 'high-quality,' 'expert workmanship,' 'custom quality,' 'perfect,' 'magnificent,' 'comfortable,' and 'picture perfect.'" *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 961 (N.D. Ill. 2024) (citation omitted).

Here, the statement that Eggland's hens are "free to roam in a pleasant natural

environment, taken as a whole, makes a verifiable promise to the consumer about the living conditions of the hens. While the statement that an environment is "pleasant" alone may amount to puffery, when combined with the promise that hens are, in fact, free to roam in a natural, pleasant environment, it is not the "vague and aspirational language that amounts to mere puffery." *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 672 (N.D. Ill. 2024); *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *4 (N.D. Ill. Mar. 15, 2016) (finding assurances that pet treats "are safe, wholesome, and digestible" was not puffery, but "objectively verifiable terms").

Lastly, Eggland asserts that Plaintiffs fail to state claims under Nevada and New Mexico's consumer protection statutes because the statement Plaintiffs allegedly relied on were not misleading. Mem. Mot. Dismiss at 22. However, for the reasons stated, viewing the allegations of the complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged a misleading statement by Eggland.

It may be the case that evidence will reveal that Eggland's statement, in light of the cage free label, is understood by consumers to mean that the hen could be roaming in a packed industrial facility, but the Court is not called upon to make that factual finding today. Accordingly, Eggland's motion to dismiss the consumer protection claims for failure to allege that a reasonable consumer would be mislead is denied.

### C. Unjust Enrichment

Next, Eggland moves to dismiss Plaintiffs' unjust enrichment claims because

plaintiffs have failed "to allege any false or misleading representations or omissions by Eggland's" under Illinois law. Mem. Mot. Dismiss at 26. Eggland argues that to plead an unjust enrichment claim, Plaintiffs are required to plead and prove Eggland's wrongful conduct, which Plaintiffs fail to do. Mem. Mot. Dismiss at 27.

Plaintiffs respond that contrary to Eggland's suggestion, Plaintiffs' unjust enrichment claims do not fall if their statutory claims fail. Resp. at 40. Plaintiffs concede that unjust enrichment is not a separate cause of action under Illinois law. However, assert Plaintiffs, Illinois law does not control all of the unjust enrichment claims. *Id*. That is, the Plaintiffs' home states control their unjust enrichment claims. *Id.*

The Court finds that Plaintiffs have the better of the argument. As explained above, Plaintiffs have sufficiently alleged a misleading statement by Eggland. "What makes the retention of the benefit unjust is often due to some improper conduct by the defendant." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Thus, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517. Accordingly, the Court denies Eggland's motion to dismiss Plaintiffs' unjust enrichment claims.

## II.    Eggland's Rule 12(b)(1) Motion

Last, Eggland argues that Plaintiffs fail to properly allege the statutory standing requirements for each state's consumer protection statute, and also fail to

20

establish Article III standing. Specifically, Eggland argues that "[b]ecause Plaintiffs received exactly the products they paid for—cage free eggs—they cannot establish the kind of actual damages necessary to state a claim under any of the relevant consumer protection statutes." Mem. Mot. Dismiss at 27. "Furthermore," Eggland posits, "because Plaintiffs have not sufficiently pled that Eggland's statements qualify as false or misleading, they have no statutory standing to bring any of their consumer protection claims against Eggland[.]" Mem. Mot. Dismiss at 29.

The Court has already found that Plaintiffs have alleged a misleading statement by Eggland. Plaintiffs also alleged that they relied on this statement in purchasing the product. Consequently, Plaintiffs paid a premium not just for cage free eggs, but also for eggs that came from hens that were free to roam in a natural, pleasant environment—something that meets more than the bare minimum requirements of a cage free egg. Accordingly, the Plaintiffs did not receive the benefit of their bargain and have alleged a financial injury. "A financial injury creates standing." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694–95 (7th Cir. 2015) ("we have held that financial injury in the form of an overcharge can support Article III standing"). Specifically, "[e]conomic harm can be a concrete injury sufficient to confer standing," "includ[ing] when, 'as a result of a deceptive act or an unfair practice,' a plaintiff is 'deprived of the benefit of his bargain.'" *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024). Thus, Plaintiffs have alleged an injury in fact that is fairly traceable to the challenged action of Eggland,

and that the injury will be redressed by a favorable decision. *Id.* at 528.

Eggland also argues that there is no duty for them to disclose the hen's living conditions, and therefore the Plaintiffs do not have standing. Mem. Mot. Dismiss at 29. Plaintiffs counter that a duty to disclose is triggered when there is an affirmative misrepresentation. Opp. at 35–36. The Court agrees with Plaintiffs. As Eggland acknowledges in its reply, Plaintiffs have standing if Eggland's representation was "contrary" to the allegedly omitted information Although there may be no independent duty for a hen farmer to disclose a hen's living conditions, the Plaintiffs here have alleged harm stemming from a premium price paid based on a misleading, affirmative representation.

Eggland next argues that the Plaintiffs have failed to tie the conditions they describe to any of Eggland's facilities, because the "undercover footage" Plaintiffs cite in support of the hens' living conditions is outdated, as it is nine year's old. Mem. Mot. at 36. The Court, however, must take the allegations in the Complaint as true. Whether Eggland's facilities still operate in the way portrayed in the videos is a question of fact that is not appropriate at this stage.

Finally, Eggland maintains that Plaintiffs have not alleged an imminent injury that would entitle them to injunctive relief. Mem. Mot. Dismiss. at 31. Specifically, Eggland points out that Plaintiffs are now aware of the deceptive conduct, and they have not made any allegation suggesting an intent to purchase Eggland's cage free eggs in the future. *Id.* at 31–32. Plaintiffs respond that they do allege that they are unable to rely on Eggland's cage free labels, which prevents them from purchasing

22

the product. Resp. at 36–37. On this point, the Court agrees with Eggland.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing for injunctive relief, Plaintiffs must allege a "real and immediate" threat of future injury from Defendants' misleading labels. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). The equitable remedy of injunctive relief is unavailable absent a showing of irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

"When considering this requirement in the context of consumer fraud claims, the majority of courts in this district concluded that a plaintiff's awareness of the alleged misrepresentations makes any future harm speculative, precluding that plaintiff from pursing injunctive relief." *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Litig.*, 2024 WL 726838, at *4 (N.D. Ill. Feb. 21, 2024) (collecting cases). The Seventh Circuit also addressed a plaintiff's standing to pursue injunctive relief in the context of a consumer fraud case in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). In *Camasta*, the Seventh Circuit noted that a plaintiff who is aware of a defendant's deceptive practice is not likely to be harmed by those practices in the future and thus lacks standing for injunctive relief. *Id.* at 741.[5]

---

[5]To the extent one considers this statement dicta, it is nevertheless telling. *See In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (noting that even if treated as dicta, *Camasta's* reasoning regarding Article III standing is persuasive.).

The Court agrees that Plaintiffs have not plausibly alleged a real and immediate threat of suffering future harm from Eggland. As Eggland correctly points out, Plaintiffs do not allege that they in fact continue to buy this product, or that they are forced to, only that they cannot rely on Eggland's assurances. *See Palmer v. Procter & Gamble Co.*, 2023 WL 5852252, at *3 (N.D. Ill. Sept. 11, 2023) ("Palmer does not allege that she continues to purchase Defendant's product. To the contrary, she confirms that she does not purchase these products anymore."); *Daly v. Glanbia Performance Nutrition*, 2023 WL 5647232 *5 (N.D. Ill. Aug. 31, 2023) ("Since [defendant] allegedly deceived [plaintiff] only once, there is no reason to infer that he faces a 'real and immediate threat' of being deceived again as required for federal standing."); *Agee v. Kroger Co.*, 2023 WL 3004628, at *8 (N.D. Ill. Apr. 19, 2023) (finding plaintiff failed to allege standing, where plaintiff did not allege he "has no choice but to purchase this product"); *see In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (finding allegations insufficient to allege standing where "Plaintiffs make clear in their complaint that they would not have purchased the Affected Products had they known the truth about them."). And unlike many of these other cases, Plaintiffs have not even alleged that they are interested in buying the product again. *Slowinski v. Beiersdorf, Inc.*, 2026 WL 323347, at *4 (N.D. Ill. Feb. 6, 2026) (finding plaintiff failed to plead standing for injunctive relief because, "[m]ost significantly, Plaintiff has not alleged that she has any interest in purchasing Defendant's products again.").

That Plaintiffs allege the injury is "ongoing" because they still cannot rely on

Eggland's representations does not change the outcome. "[W]hether a defendant continues its allegedly deceptive trade practices is irrelevant: What matters is whether a plaintiff is likely to be harmed by them again." *Guajardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *7 (C.D. Ill. Sept. 21, 2021). True, some courts have found differently based on similar facts. *See Gibson v. Albertsons Companies, Inc.*, 754 F. Supp. 3d 793 (N.D. Ill. 2024). But the Court follows what appears to be the majority approach. Indeed, courts in this district have since come out differently from *Gibson*, noting that although a court has no reason to doubt that a plaintiff might still want to purchase a product but for the misrepresentation, "that does not suffice to transform a hypothetical injury into one that is actual or imminent" *Waggener Van Meter v. Mondelez Int'l, Inc.*, 2025 WL 3678444, at *7 (N.D. Ill. Dec. 18, 2025) (finding allegation that plaintiff can no longer rely on defendant's labeling to be insufficient to establish standing for injunctive relief).

In short, Plaintiffs' allegations do not indicate that they are at imminent risk of purchasing Eggland's product and being deceived once more. Rather, Plaintiffs' allegations amount to an admission that, based on their knowledge of Eggland's alleged deception, they will avoid this deception by not purchasing the product. The weight of authority in the Seventh Circuit indicates that such an allegation precludes Plaintiffs from injunctive relief.

Accordingly, Plaintiffs' claims are dismissed for lack of standing to the extent that they seek injunctive relief.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Eggland's Motion to Dismiss. R. 20. The Court's dismissal of Plaintiffs' claim for injunctive relief is without prejudice.


Dated: February 27, 2026

_____
United States District Judge
Franklin U. Valderrama

26